IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DARIUSZ JAWORSKI, BOGUSLAW MOSKAL, and RYSZARD BESTER, | ) ) ) | |
| Plaintiffs, | ) ) | No. 09 C 07255 |
| v. | ) ) ) | Judge John J. Tharp, Jr. |
| MASTER HAND CONTRACTORS, INC., MASTERHAUS BUILDERS, INC., PURCON, LTD., WALTER F. BOCHENEK, and BOGDAN KULIKOWSKI, individually, | ) ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

The plaintiffs, Dariusz Jaworski, Boguslaw Moskal, and Ryszard Bester, allege that defendants Master Hand Contractors, Inc. ("Master Hand"), Masterhaus Builders, Inc. ("Masterhaus"), Purcon, Ltd. ("Purcon"), Walter Bochenek, and Bogdan Kulikowski[1] violated the Fair Labor Standards Act (the "FLSA") and the Illinois Minimum Wage Law (the "IMWL") by failing to pay minimum and overtime wages. In addition, the plaintiffs allege that the defendants violated the Illinois Wage Payment and Collection Act (the "IWPCA") by failing to pay earned wages, and the Employee Classification Act (the "ECA") by failing to properly classify the plaintiffs as employees. The plaintiffs move for summary judgment pursuant to Rule 56 on the defendants' liability for violations of the FLSA, IMWL, IWPCA, and ECA.[2] For the

---

[1] The plaintiffs made claims against Kulikowski in their Second Amended Complaint but have not alleged any facts to support their motion for summary judgment against him, and do not list him on the caption of the motion. Therefore, any claims against Kulikowski are not subject to the plaintiffs' motion for summary judgment.

[2] The plaintiffs move for summary judgment on Counts I through VI of the complaint only. Counts VII through IX, asserting claims for retaliation under the FLSA and ECA, and a violation

reasons stated below, the Court denies the plaintiffs' motion for summary judgment on the FLSA, IMWL, and IWPCA claims because the plaintiffs failed to dispel all disputes of material fact and therefore cannot establish that they are entitled to judgment as a matter of law. But the Court grants the plaintiffs' motion for summary judgment on the ECA claim because on that claim the defendants bear the burden of showing that the plaintiffs are not their employees, and they failed to allege any facts that, if true, would allow them to meet that burden.

I.  **Background**

Between 2005 and 2012 (the "relevant time period"), Defendant Master Hand operated a general contracting construction business that involved remodeling, restoring, and repairing residential and commercial buildings. Defs.' Resp. to Pls.' Statement of Facts ¶ 17.[3] Defendants Masterhaus and Purcon were subcontractors to Master Hand and shared their principal places of business with Master Hand. *Id.* ¶¶ 1-3, 18-19. Defendant Bochenek was the chief officer, president, and only individual classified as an employee of Master Hand, Masterhaus, and Purcon. *Id.* ¶¶ 4, 21-23. As such, he was involved in the day-to-day operations of all three corporations, and he had the authority to direct and supervise, as well as hire and fire, employees on behalf of each of the companies. *Id.* ¶¶ 8-10. The plaintiffs maintain that the defendants comprise a single enterprise for purposes of the statutes at issue, and the defendants do not dispute the point. Accordingly, we will simplify the analysis by treating the three defendants, and Bochenek, their CEO, as a unit and refer only to Master Hand.

---

of the Illinois Prevailing Wage Act, 820 Ill. Comp. Stat. 130/0.01 *et seq.*, are not challenged in this motion.

[3] On the plaintiffs' motion for summary judgment the Court construes all facts and reasonable inferences in the light most favorable to the defendants. *Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005).

During the relevant time period, the plaintiffs worked for Master Hand, which classified the plaintiffs as independent contractors. *Id.* ¶¶ 5-7, 11-13, 24. The plaintiffs began working for Master Hand between 2004 and 2006, and they performed carpentry, roofing, mechanical repair, restoration, demolition, tiling, sewer work, plumbing, and HVAC. *Id.* ¶¶ 25-27.

Master Hand paid the plaintiffs for the work that they performed, but it did not pay them time-and-a-half for every hour worked in excess of forty hours per week. *Id.* ¶¶ 29, 43. In fact, Master Hand paid Plaintiff Jaworski for the subcontracting work he and his company performed on a per-job basis. *Id.* ¶ 41. The plaintiffs used time cards and other documents to keep track of their hours worked, but Master Hand did not require any specific form for their time records. *Id.* ¶¶ 38-39. Master Hand also reimbursed the plaintiffs when they purchased supplies, equipment, and materials. *Id.* ¶ 37. At their worksites, the plaintiffs were allowed to use Master Hand's equipment, but they were not required to do so, and the plaintiffs had their own tools as well. *Id.* ¶ 20.

Master Hand would periodically inspect the plaintiffs' work, but did not "supervise" them on a day-to-day basis. *Id.* ¶ 32. Master Hand also conducted training sessions regarding OSHA requirements, but it provided no other training. *Id.* If they were going to be absent or late to a job site, the plaintiffs had to inform Master Hand, and they were subject to termination for excused or unexcused absences. *Id.* ¶¶ 34-35. On one occasion, Defendant Bochenek referred to Jaworski as an employee in a letter he wrote to convince immigration authorities to allow Jaworski's wife to visit him in the United States stating, "Please be [advised] that . . . Mr. Dariusz Jaworski is employed by Master Hand Contractors, Inc. as [a] Mechanic/Electronic Specialist and his position is permanent." *Id.* ¶ 36. But besides working for Master Hand,

Jaworski also had his own car repair shop and worked many hours for other entities with no relationship to Master Hand. *Id.* ¶ 31.

II.    Analysis

   A. FLSA

The plaintiffs argue that Master Hand violated the FLSA provisions requiring an employer to pay employees minimum wage and to compensate employees at a rate not less than one and one-half times the regular rate for hours in excess of forty per workweek. *See* 29 U.S.C. §§ 206-07. The FLSA's minimum wage provision states:

> Every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce, or in the production of goods for commerce, wages at the following rates: [the minimum wage].

*Id.* § 206(a). The FLSA's overtime compensation provision states:

> Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

*Id.* § 207(a)(1). For the FLSA to apply, the plaintiffs must show that they are employees (rather than independent contractors), and that Master Hand is an enterprise engaged in commerce.[4]

---

[4] To succeed on their claims, the plaintiffs would also have to show that each defendant was an "employer" as defined by the FLSA. Because (as will be seen) the plaintiffs cannot establish that they were employees, the Court need not at this time examine whether they have shown that Master Hand was their employer.

### 1. The Plaintiffs Fail to Establish that They Are Employees.

When deciding whether individuals are "employees" under the FLSA, courts inquire whether the individuals "as a matter of economic reality are dependent upon the business to which they render service."[5] *Sec'y of Labor v. Lauritzen*, 835 F.2d 1529, 1534 (7th Cir. 1987) (quoting *Mednick v. Albert Enters., Inc.*, 508 F.2d 297, 299 (5th Cir. 1975)) (internal quotation marks omitted). The Court will look at the totality of circumstances, including:

> 1) the nature and degree of the alleged employer's control as to the manner in which the work is to be performed;
> 2) the alleged employee's opportunity for profit or loss depending upon his managerial skill;
> 3) the alleged employee's investment in equipment or materials required for his task, or his employment of workers;
> 4) whether the service rendered requires a special skill;
> 5) the degree of permanency and duration of the working relationship;
> 6) the extent to which the service rendered is an integral part of the alleged employer's business.

*Id.* at 1534-35.

#### a. Control

Evidence that reflects "the employer's dominance over the 'manner and method' of how work is performed" tends to show that the individual was an employee under the "control" of the employer. *Harper v. Wilson*, 302 F. Supp. 2d 873, 878 (N.D. Ill. 2004) (quoting *Carrell v. Sunland Constr., Inc.*, 998 F.2d 330, 332 (5th Cir. 1993)). The plaintiffs present only the following undisputed facts tending to show that they were under Master Hand's control: (1) Master Hand made periodic inspections of the work to ensure it was completed in accordance with the owner's expectations; (2) Master Hand conducted training sessions regarding OSHA requirements; (3) the plaintiffs had to inform Master Hand if they were going to be absent from

---

[5] The FLSA unhelpfully defines "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e)(1).

or late to a job site;[6] and (4) the plaintiffs were subject to termination for absences, excused or unexcused.[7] Defs.' Resp. to Pls.' Statement of Facts ¶¶ 32, 34-35.[8]

These undisputed facts do not conclusively establish that Master Hand exerts significant control over the manner in which the plaintiffs work. Master Hand vigorously disputes the degree of control it exercised, and the plaintiffs appear to equate the setting of standards for a project with control over the manner in which work on the project is conducted. Only the latter is relevant to the question of whether a worker is an employee or a contractor; a firm is entitled to set performance standards for employees and contractors alike. Ultimately, the plaintiffs have not shown that they were unable to independently determine the manner and method of performing their jobs. *Compare Carrell*, 998 F.2d at 332-34 (no control over the manner or method of pipe welders' work where company's customers dictated the welding procedures and the company did not limit the amount of time spent per assignment), *with Solis v. Int'l Detective & Protective Serv., Ltd.*, 819 F. Supp. 2d 740, 750 (N.D. Ill. 2011) (employer controlled method and manner of job performance where it provided specific operating procedures, closely monitored compliance with those procedures, and required detailed reports of all events that occurred during a shift), *and Robicheaux v. Radcliff Material, Inc.*, 697 F.2d 662, 666-67 (5th Cir. 1983) (company exercised substantial control over welders where it required them to work during certain times, gave daily work assignments, told them how long their assignments should take, and supervised them periodically throughout the day).

---

[6] Master Hand alleges that this was done to ensure timely completion of work and to fulfill the general contractor's obligation to identify individuals present at the job site. Defs.' Resp. to Pls.' Statement of Facts ¶ 34.

[7] Master Hand alleges that termination would occur only if absences resulted in delays unacceptable to the owner. *Id.* ¶ 35.

[8] Master Hand disputes several other facts material to the question of how much control it exercised over the plaintiffs, including whether it provided the plaintiffs with a work schedule, whether the plaintiffs filled out time cards, and the purpose of the time cards. *Id.* ¶¶ 32-33, 38.

Therefore, because the plaintiffs are unable to present undisputed facts showing that Master Hand exerted a high degree of control over their work, this factor does not weigh in favor of finding the plaintiffs to be employees for the purpose of summary judgment.

### b. Opportunity for Profit or Loss

If in the course of performing services, an individual risks loss of an investment and has the opportunity to increase profits through managerial discretion, that fact weighs in favor of finding independent contractor status. *U.S. Equal Empl't Opportunity Comm'n v. Century Broadcasting Corp.*, No. 89 C 5842, 1990 WL 43286, at *4 (N.D. Ill. Mar. 23, 1990) (citing *Lauritzen*, 835 F.2d at 1536). The plaintiffs argue that they had no opportunity for additional profit or loss, but the only undisputed fact relevant to this factor, that one of the plaintiffs signed a contract for a job with another company, Polamer, Inc., favors Master Hand. Defs.' Resp. to Pls.' Statement of Facts ¶ 30. Plainly, the plaintiffs had some opportunity and ability to work for other firms, and that fact strongly suggests that the plaintiffs did have the opportunity to increase their revenues (or decrease them, either by not pursuing or retaining other work). *Compare Carrell*, 998 F.2d at 334 (although employer controlled opportunity for profits by fixing the hourly rate and the hours of work, profits also depended on the welders' ability to control their own costs and work for numerous companies), *with Robicheaux*, 697 F.2d at 667 (employer's need for work, rather than the welders' initiative and planning, determined any opportunity for profit). Because the plaintiffs have not submitted undisputed facts showing that they had no opportunity for additional profit or loss, this factor does not weigh in favor of employee status.

### c. Investment

For similar reasons, a worker who makes a large out-of-pocket investment in his job is more likely to be an independent contractor. This investment factor is related to the opportunity

7

for profit or loss factor, and it takes into account those investments that are "large expenditures" rather than "negligible items or labor itself." *Lauritzen*, 835 F.2d at 1537 (quoting *Donovan v. Gillmor*, 535 F. Supp. 154, 161 (N.D. Ohio 1982)) (internal quotation marks omitted). The plaintiffs argue that they were not required to make any capital investments to perform their duties. The undisputed facts show that Master Hand provided heavy machinery and capital equipment for large-scale construction jobs. Defs.' Resp. to Pls.' Statement of Facts ¶ 18. And Master Hand reimbursed the plaintiffs when the plaintiffs purchased some supplies, equipment, and materials. *Id.* ¶ 37.

These undisputed facts weigh in favor of the plaintiffs, but material facts related to this factor are still in dispute. Master Hand alleges that the plaintiffs invested in their own tools, and it argues that it only reimbursed the plaintiffs for purchasing those supplies "that were the general contractor's responsibility." Resp. Br. (Dkt. 79) at 6. Therefore, examining this factor in the light most favorable to Master Hand, the plaintiffs made at least some capital investment in their jobs, and this factor does not weigh substantially in favor of finding the plaintiffs to be employees.

### d. Special Skills

Highly specialized skills weigh in favor of independent contractor status. *See Carrell*, 998 F.2d at 333-34. However, "[s]kills are not the monopoly of independent contractors," and a worker must develop some degree of occupational skill to be a good employee in any line of work. *Lauritzen*, 835 F.2d at 1537. The undisputed facts show that the plaintiffs performed skilled construction work for Master Hand. Defs.' Resp. to Pls.' Statement of Facts ¶¶ 25-27. Their skills, however, are of the sort that a general construction firm would likely have need for on many, if not most jobs, so their skill set says little about their status as contractors or

employees one way or the other; they are not the sort of tradesmen that a general contractor would be unlikely to employ because their skills are so specialized as to be rarely needed. In the Court's view, this factor cuts in favor of neither party.

### e. Degree of Permanency and Duration

The undisputed facts show that the plaintiffs each began working for Master Hand between 2004 and 2006. *Id.* ¶¶ 25-27. During the relevant time period, Master Hand classified the plaintiffs as independent contractors, *id.* ¶ 24, but on August 25th, 2006, Defendant Bochenek wrote a letter for immigration purposes stating that Master Hand employed Jaworski as a mechanic/electronic specialist, and his position was permanent. *Id.* ¶ 36. But Master Hand asserts that the plaintiffs have each also worked many hours for unrelated entities during the relevant time period. For example, during one three-week period in 2008 one of the plaintiffs (the record does not reveal which one) signed a contract for a job as a subcontractor with Polamer, *id.* ¶ 30, and Jaworski and others worked many hours for the European Foundation and other entities unrelated to Master Hand. *Id.* ¶ 31. Jaworski even owned a car repair shop. *Id.*

The undisputed facts before the Court do not conclusively establish that a permanent working relationship existed between the parties. Although the plaintiffs have worked for Master Hand for many years, the statements of undisputed facts do not reveal whether the parties' relationships have been continuous or exclusive over that time. *Compare Carrell*, 998 F.2d at 333-34 (welders were independent contractors where they did not work exclusively for the construction company but were hired on a project-by-project basis by many companies) *with Robicheaux*, 697 F.2d at 666-67 (welders were employees where they worked almost exclusively with the company for durations between ten months and three years). Furthermore, several material facts remain in dispute, including whether the plaintiffs signed a contract with Master

Hand's customers or with Master Hand before commencing work on a job, whether the plaintiffs entered into other contracts with entities independent of Master Hand, and whether the plaintiffs' income came almost exclusively from work for Master Hand. *Id.* ¶¶ 28, 30-31. Accordingly, this factor does not clearly weigh in favor of either party at this juncture.

### f. Integral Part of the Business

Individuals are more likely employees "if they perform the primary work of the alleged employer." *Harper*, 302 F. Supp. 2d at 879 (quoting *Donovan v. DialAmerica Mktg., Inc.*, 757 F.2d 1376, 1385 (3d Cir. 1985)) (internal quotation marks omitted). The plaintiffs argue that their services formed an integral part of Master Hand's business.

Master Hand operated large-scale construction and remodeling companies to which the plaintiffs contributed by performing carpentry, roofing, demolition, plumbing, mechanical repair, and the like. Defs.' Resp. to Pls.' Statement of Facts ¶¶ 25-27. Thus, the undisputed facts establish that the plaintiffs were directly engaged in Master Hand's construction businesses, and they appear to have been an integral part of those businesses. *See, e.g.*, *Lauritzen*, 835 F.2d at 1537-38 (finding that migrant workers who harvested pickles for a pickle business were an integral part of that business); *Century Broadcasting Corp.*, 1990 WL 43286, at *4 (finding that announcers were an integral part of a radio broadcasting business).

The defendants assert in their brief that "[f]or purposes of this lawsuit, Defendants were general contractors," and that, by way of example, "[a]n electrician going to work for an electrical subcontractor is an employee; an electrical subcontractor engaged by a general contractor to perform electrical services is an independent contractor." Resp. Br. (Dkt. 79) at 7-8. But they admit in their fact responses that only Master Hand was a general contractor, and that Masterhaus and Purcon were subcontractors, not general contractors. Defs.' Resp. to Pls.'

Statement of Facts ¶¶ 17-19. Their own reasoning, then, appears to support an argument that, at least so far as their work for Masterhaus and Purcon is concerned, the plaintiffs were employees rather than independent contractors. The Court will not, however, hoist the subcontractor defendants on their own petards, as this concession is not only improvident but also incorrect. Everyone who performs services for a subcontractor is not an employee *per se*; subcontractors may hire independent contractors as well. The Court does find, however, that given their skills and their long relationship with Master Hand, the plaintiffs were an integral part of Master Hand's business and this factor, therefore, weighs in favor of finding the plaintiffs to have been employees.

So it is a mixed bag at present. Viewing the facts in a light most favorable to Master Hand and considering all of the circumstances surrounding the work activity, the plaintiffs have not conclusively established that they were employees for purposes of the FLSA. Though they have shown that they were an integral part of the business, disputed questions of fact remain regarding the other relevant factors, and on this record the Court cannot conclude as a matter of law that the plaintiffs were employees. Because the plaintiffs must show that they were employees in order to succeed on their FLSA claims, the plaintiffs' motion for summary judgment is denied with respect to the FLSA claims.[9]

---

[9] Besides showing that they are employees, in order to establish liability under the FLSA the plaintiffs must also establish that they are "employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. §§ 206-07. No party discusses this requirement. Because the plaintiffs bear the burden of proof and because they have not established that any defendant was an enterprise engaged in commerce or in the production of goods for commerce, the motion for summary judgment on the FLSA claim is also denied for this additional reason.

## B. IMWL

The plaintiffs next allege that Master Hand violated the IMWL's minimum wage and overtime provisions. *See* 820 Ill. Comp. Stat. §§ 105/4-105/4a. The IMWL's minimum wage provision requires that "[e]very employer shall pay to each of his employees in every occupation [the minimum wage]." *Id.* § 105/4(a)(1). The IMWL's overtime provision further states that "no employer shall employ any of his employees for a workweek of more than 40 hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than 1 ½ times the regular rate at which he is employed." *Id.* § 105/4a(1).

The IMWL defines an employer as "any individual, partnership, association, corporation, limited liability company, business trust, governmental or quasi-governmental body, or any person or group of persons acting directly or indirectly in the interest of an employer in relation to an employee . . . ." *Id.* § 105/3(c). It defines an employee as "any individual permitted to work by an employer in an occupation, but does not include any individual permitted to work . . . for an employer employing fewer than 4 employees exclusive of the employer's parent, spouse, or child or other members of his immediate family." *Id.* § 105/3(d).

The IMWL parallels the FLSA and the same analysis generally applies to both statutes. *See Morgan v. SpeakEasy, LLC*, 625 F. Supp. 2d 632, 650 (N.D. Ill. 2007) (citing *Ladegaard v. Hard Rock Concrete Cutters, Inc.*, No. 00 C 5755, 2004 WL 1882449, at *4 (N.D. Ill. Aug. 18, 2004); *Bulaj v. Wilmette Real Estate & Mgmt. Co.*, No. 09 CV 6263, 2010 WL 4237851, at *10 (N.D. Ill. Oct. 21, 2010). The Illinois Administrative Code specifically states that interpretations of the FLSA should provide guidance to parties interpreting the IMWL, and it sets forth a six-factor test for determining employee status that essentially parallels the FLSA test. Ill. Admin. Code tit. 56, §§ 210.110, 210.120. Because the plaintiffs are unable to establish that they were

employees under the FLSA, they also fail to show that they are employees under the IMWL. Therefore, the plaintiffs' motion for summary judgment on the IMWL claim is denied.

### C. IWPCA

Under the IWPCA, "[e]very employer shall be required, at least semi-monthly, to pay every employee all wages earned during the semi-monthly pay period."[10] 820 Ill. Comp. Stat. 115/3. The purpose of the IWPCA is "to provide employees with a cause of action for the timely and complete payment of earned wages or final compensation, without retaliation from employers." *Byung Moo Soh v. Target Mktg. Sys., Inc.*, 353 Ill. App. 3d 126, 129, 817 N.E.2d 1105, 1107 (Ill. App. 2004) (internal quotation marks omitted). The term "employer" is defined as "any individual, partnership, association, corporation, limited liability company, business trust, . . . or any person or group of persons acting directly or indirectly in the interest of an employer in relation to an employee, for which one or more persons is gainfully employed." 820 Ill. Comp. Stat. 115/2. The term "employee" includes "any individual permitted to work by an employer in an occupation," but does not include any individual:

> (1) who has been and will continue to be free from control and direction over the performance of his work, both under his contract of service with his employer and in fact; and
>
> (2) who performs work which is either outside the usual course of business or is performed outside all of the places of business of the employer unless the employer is in the business of contracting with third parties for the placement of employees; and
>
> (3) who is in an independently established trade, occupation, profession or business.

---

[10] The plaintiff bears the burden of proof on the IWPCA claim. *Baudin v. Cortesy Litho Arts, Inc.*, 24 F. Supp. 2d 887, 894 (N.D. Ill. 1998).

*Id.* Wages are defined as "any compensation owed an employee by an employer pursuant to an employment contract or agreement between the 2 parties, whether the amount is determined on a time, task, piece, or any other basis of calculation." *Id.*

The plaintiffs argue that they are employees under the IWPCA for the same reasons that they claim to be employees under the IMWL and FLSA. Leaving aside the fact that the plaintiffs have not established that they are employees under those other statutes, the IWPCA test for determining whether a worker is an employee is entirely different than the FLSA/IMWL test. The plaintiffs have not attempted to show that their work was not performed "outside of the places of business of the employer," or that they are not members of an independently established trade, both crucial elements under the IWPCA. The plaintiffs thus have not asserted sufficient facts to show that they are employees for purposes of the IWPCA, and therefore their motion for summary judgment on the IWPCA claim is denied.

### D. ECA

The ECA makes it unlawful for an employer to fail to properly classify individuals performing services as employees in order "to address the practice of misclassifying employees as independent contractors." 820 Ill. Comp. Stat. 185/3, 185/20. The ECA applies only to individuals performing services "for a contractor" on or after January 1, 2008. *Id.* § 185/10(a), 185/999; Ill. Admin. Code tit. 56, § 240.120. For the purposes of the ECA, an individual performing services for a contractor is an employee of the contractor unless it is established that:

> (1) the individual has been and will continue to be free from control or direction over the performance of the service for the contractor, both under the individual's contract of service and in fact;
>
> (2) the service performed by the individual is outside the usual course of services performed by the contractor; and

14

> (3) the individual is engaged in an independently established trade, occupation, profession or business; or
>
> (4) the individual is deemed a legitimate sole proprietor or partnership under subsection (c) of this Section.[11]

820 Ill. Comp. Stat. 185/10(b). The ECA thus establishes a rebuttable presumption that an individual performing services for a contractor, as defined by the ECA, is an employee. *Chi. Reg'l Council of Carpenters v. Joseph J. Sciamanna, Inc.*, No. 08 C 4636, 2009 WL 1543892, at *6 (N.D. Ill. June 3, 2009); *World Painting Co. v. Costigan*, 2012 IL App (4th) 110869 ¶ 17, 967 N.E.2d 485, 489 (Ill. App. Ct. 2012). The term "contractor" includes general contractors and subcontractors and can be "any sole proprietor, partnership, firm, corporation, limited liability company, association, or other legal entity permitted by law to do business within the State of Illinois who engages in construction." 820 Ill. Comp. Stat. § 185/5.

The plaintiffs argue that they are employees under the ECA and that Master Hand violated the ECA by failing to appropriately classify them as such. The undisputed facts show that Defendants Master Hand, Masterhaus, and Purcon were corporations doing business within the state of Illinois who were engaged in construction.[12] Defs.' Resp. to Pls.' Statement of Facts ¶¶ 1-3, 17-19. The corporate defendants are therefore contractors under the ECA.

The only remaining question is whether the plaintiffs are employees. Unlike the FLSA, IMWL, and the IWPCA, under the ECA the defendant bears the burden of showing that the plaintiffs are *not* employees. *World Painting Co.*, 2012 IL App (4th) 110869 ¶ 17, 967 N.E.2d at 489. Where, as here, "the non-moving party bears the burden of proof on an issue . . . that party

---

[11] The ECA contains a separate 12-factor test for establishing "legitimate sole proprietor or partnership." 820 Ill. Comp. Stat. 185/10(c).

[12] Defendant Bochenek is an individual, not a corporation, so the plaintiffs' ECA claims do not apply to him. *See Chicago Reg'l Council of Carpenters v. Joseph J. Sciamanna, Inc.*, No. 08 C 4636, 2008 WL 46961612, *2 (N.D. Ill. Oct. 23, 2008) ("By its clear and unambiguous text, the Illinois ECA does not provide for personal liability against a corporate officer or director.").

may not rest on the pleadings and must instead show that there is a genuine issue of material fact." *Larimer v. Dayton Hudson Corp.*, 137 F.3d 497, 500 (7th Cir. 1998) (quoting *Sample v. Aldi Inc.*, 61 F.3d 544, 547 (7th Cir. 1995)) (internal quotation marks omitted).

Master Hand has failed to establish a genuine issue of material fact as to each element of the employee analysis. Rather than alleging facts, Master Hand provides only conclusory statements that the plaintiffs were free from control or direction, their services were performed outside the usual course of service, and the plaintiffs were engaged in an independently established trade or business. Resp. Br. (Dkt. 79) at 8. Master Hand does not allege any facts that could conceivably establish, for example, that the services the plaintiffs performed are "outside the usual course of services performed by the [defendants]." That is an essential element—on which Master Hand bears the burden of proof—of a defense to an ECA claim. 820 Ill. Comp. Stat. 185/10(b). Master Hand also does not raise any disputed issue of material fact as to whether the plaintiffs are "engaged in an independently established trade" or are "legitimate sole proprietors." *Id.* Conclusory statements contending that Master Hand has established those elements are not enough to avoid summary judgment. *See Scaife v. Cook County*, 446 F.3d 735, 740 (7th Cir. 2006) (conclusory allegations are insufficient on summary judgment).

Because Master Hand alleges no facts whatsoever that would, if true, rebut the presumption that the plaintiffs were employees under the ECA, the plaintiffs' motion for summary judgment with respect to the ECA claim (Count VI) is granted. Master Hand misclassified the plaintiffs as independent contractors, and the plaintiffs are entitled to collect (1) any wages, salary, benefits, or other compensation lost by reason of the violation, plus an equal amount in liquidated damages; (2) compensatory damages up to $500 each; and (3) their attorney's fees and costs incurred in bringing Count VI. 820 Ill. Comp. Stat. 185/60(a).

Since the plaintiffs have not yet attempted to prove any damages, this order determines liability only, with damages to be proven. That said, it would not appear that the plaintiffs are entitled, solely by virtue of the ECA violation, to any compensatory (as opposed to statutory) damages. The ECA awards to successful plaintiffs the wages and compensation "lost to the person by reason of the violation," but the ECA itself does not entitle the plaintiffs to any particular wage. *Id.* Therefore it is uncertain what compensation, if any, the plaintiffs lost because of Master Hand's ECA violation. Whether the plaintiffs were entitled to higher wages under the FLSA or IMWL, for example, turns on whether they were "employees" as defined by those statutes, not as defined by the ECA's broader definition of that term. In other words, that the defendants violated the ECA does not, standing alone, establish that they violated the FLSA or IMWL. Or at least so it appears at present, but neither party has briefed this issue and the Court will therefore reserve judgment on the question.

\* \* \*

For the reasons set forth above, the Court denies the plaintiffs' motion for summary judgment on the FLSA, the IMWL, and the IWPCA claims. The Court grants the plaintiffs' motion for summary judgment on the ECA claim.

Entered: March 27, 2013

John J. Tharp, Jr.
United States District Judge