# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| DARIUSZ JAWORSKI, BOGUSLAW MOSKAL, and RYSZARD BESTER, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 09 C 07255 |
| MASTER HAND CONTRACTORS, INC., MASTERHAUS BUILDERS, INC., PURCON, LTD., WALTER F. BOCHENEK, and BOGDAN KULIKOWSKI, individually, | ) ) ) ) ) ) ) | Judge John J. Tharp, Jr. |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Dariusz Jaworski, Boguslaw Moskal, and Ryszard Bester allege that defendants Master Hand Contractors, Inc. ("Master Hand"), Masterhaus Builders, Inc. ("Masterhaus"), Purcon, Ltd. ("Purcon"), Walter Bochenek, and Bogdan Kulikowski violated the Fair Labor Standards Act (the "FLSA") and the Illinois Minimum Wage Law (the "IMWL") by failing to pay minimum and overtime wages. The plaintiffs also allege that the defendants violated the Illinois Prevailing Wage Act (the "IPWA") by failing to pay the general prevailing rate for work on public works projects, the Illinois Wage Payment and Collection Act (the "IWPCA") by failing to pay earned wages, and the Employee Classification Act (the "ECA") by failing to properly classify the plaintiffs as employees. In addition, the plaintiffs allege that the defendants violated the retaliation provisions of the FLSA and ECA.

The Court previously denied summary judgment for the plaintiffs on the FLSA, IMWL, and IPWA claims in Counts I through V but found Master Hand, Masterhaus, and Purcon liable on the ECA claim in Count VI, since the defendants failed to allege any facts that, if true, would

have allowed them to meet their burden of showing that the plaintiffs were not their employees for purposes of the ECA.[1] The plaintiffs now move for summary judgment pursuant to Rule 56 on the liability of the three corporate defendants for damages under Section 60(a)(1).[2] In particular, the plaintiffs seek a determination that these defendants are liable under Section 60(a)(1) for the minimum and overtime wages provided for in the IMWL and the other earned wages provided for in the IWPCA. For the reasons stated below, the Court grants the plaintiffs' motion for summary judgment.

I. BACKGROUND

Between 2005 and 2013 (the "relevant time period"), Defendant Master Hand operated a general contracting construction business that involved remodeling, restoring, and repairing residential and commercial buildings.[3] Defendants Masterhaus and Purcon were subcontractors to Master Hand and shared their principal places of business with Master Hand. Defendants

---

[1] The ECA makes it unlawful for an employer to fail to properly classify individuals performing services as employees in order "to address the practice of misclassifying employees as independent contractors." 820 Ill. Comp. Stat. 185/3, 185/20. The ECA applies only to individuals performing services "for a contractor" on or after January 1, 2008. *Id.* § 185/10(a), 185/999; Ill. Admin. Code tit. 56, § 240.120. Section 10(b) of the ECA establishes a rebuttable presumption that an individual performing services for a contractor, as defined by the ECA, is an employee. *Chi. Reg'l Council of Carpenters v. Joseph J. Sciamanna, Inc.*, No. 08 C 4636, 2009 WL 1543892, at *6 (N.D. Ill. June 3, 2009); *World Painting Co. v. Costigan*, 2012 IL App (4th) 110869, ¶ 17, 967 N.E.2d 485, 489.

[2] This opinion applies only to the defendants' liability for damages for the ECA claim in Count VI, and only as to damages for unpaid wages under Section 60(a)(1). In granting summary judgment in favor of the plaintiffs on their ECA liability claim, the Court has already noted that the corporate defendants are liable to the plaintiffs for liquidated damages under Section 60(a)(1) (in an amount equivalent to the damages for lost compensation), statutory damages under Section 60(a)(2), and attorneys' fees under Section 60(a)(4). The Court now clarifies that under Section 60(a)(2) the corporate defendants are liable to the plaintiffs for any compensatory damages (other than unpaid wages) *and* an amount up to $500 per plaintiff for the ECA misclassification. The plaintiffs have not moved for summary judgment as to the amount of their damages.

[3] On the plaintiffs' motion for summary judgment the Court construes all facts and reasonable inferences in the light most favorable to the defendants. *Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005).

2

Master Hand, Masterhaus, and Purcon comprise a single enterprise for purposes of the statutes at issue. Accordingly, the Court will simplify the analysis by treating the three corporate defendants as a unit and refer only to Master Hand.

During the relevant time period, the plaintiffs worked for Master Hand, which classified the plaintiffs as independent contractors. The plaintiffs began working for Master Hand between 2004 and 2006, and they performed carpentry, roofing, mechanical repair, restoration, demolition, tiling, sewer work, plumbing, and HVAC work. Master Hand did not pay the plaintiffs time-and-a-half for every hour they worked in excess of forty hours per week. At times, Master Hand also did not pay the plaintiffs the full amount agreed upon for the work performed.

## II. ANALYSIS

Summary judgment is appropriate if there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). This motion for summary judgment essentially presents a pure question of statutory construction. The plaintiffs seek summary judgment as to Master Hand's liability for damages under Section 60(a)(1) of the ECA on two alternative bases: (1) the plain language of the ECA incorporates the substantive rights of the IMWL and IWPCA by reference, and (2) in the alternative, the ECA's language is ambiguous but the legislative intent was to enable construction workers to obtain those substantive rights without having to separately establish that they are "employees" under the IMWL and IWPCA. For the reasons stated below, the Court grants the plaintiffs' motion on the second basis.

Section 60(a)(1) of the ECA entitles a person whose rights have been violated under the ECA to collect "the amount of any wages, salary, employment benefits, or other compensation denied or lost to the person by reason of the violation, plus an equal amount in liquidated

damages." 820 Ill. Comp. Stat. § 185/60(a)(1). In ruling on the plaintiffs' prior motion for summary judgment, the Court held that Master Hand misclassified the plaintiffs as independent contractors in violation of the ECA and stated that the plaintiffs were entitled to collect "any wages, salary, benefits, or other compensation lost by reason of the violation, plus an equal amount in liquidated damages." Dkt. 84 at 16. The Court expressly reserved judgment on the question of what compensatory damages, if any, the plaintiffs were entitled to under Section 60(a)(1). The Court now turns to that question.

The plaintiffs argue that Section 60(a)(1) entitles them to collect back wages due under the IMWL and IWPCA. They contend that the plain language of the ECA incorporates the substantive rights of the IMWL and IWPCA by reference or, alternatively, that the language of the ECA is ambiguous and their interpretation is consistent with the legislative intent. Master Hand argues in response that the plain language of the ECA does not incorporate the substantive rights of the IMWL and IWPCA by reference and that the legislature did not intend to create "a two-tier system in which construction workers would be covered by all Illinois labor statutes" without having to meet the same coverage requirements as workers in other industries. Defs.' Mem. in Opposition to Pls.' Motion for Summary Judgment, Dkt. 94 at 7-8.

No court has interpreted Section 60(a)(1), either alone or in relation to other Illinois employment laws such as the IMWL or IWPCA. This Court must predict how the Supreme Court of Illinois would decide the issue. *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 634-35 (7th Cir. 2007). The Supreme Court of Illinois has outlined its approach to statutory interpretation as follows:

> The fundamental rule of statutory construction is to ascertain and give effect to the legislature's intent. The best indication of legislative intent is the statutory language, given its plain and ordinary meaning. Where the language is clear and unambiguous,

> we must apply the statute without resort to further aids of statutory construction. If the statutory language is ambiguous, however, we may look to other sources to ascertain the legislature's intent. A court will give substantial weight and deference to an interpretation of an ambiguous statute by the agency charged with administering and enforcing that statute. . . . A statute is ambiguous if it is capable of being understood by reasonably well-informed persons in two or more different ways.

*People ex rel. Birkett v. City of Chicago*, 202 Ill. 2d 36, 45-46, 779 N.E.2d 875, 881 (2002) (citations omitted). In determining the plain meaning of statutory terms, the Supreme Court of Illinois "consider[s] the statute in its entirety, keeping in mind the subject it addresses and the apparent intent of the legislature in enacting it." *People v. Perry*, 224 Ill. 2d 312, 323, 864 N.E.2d 196, 204 (2007). In addition to administrative agency interpretations, the Supreme Court of Illinois also utilizes legislative history as an extrinsic aid for ascertaining legislative intent. *People v. Eppinger*, 2013 IL 114121, ¶ 32, 984 N.E.2d 475, 485.

The plaintiffs' "plain language" argument can be disposed of quickly. Consistent with its earlier observation that "the ECA itself does not entitle the plaintiffs to any particular wage," Dkt. 84 at 17, the Court finds that the ECA does not incorporate the IMWL and IWPCA by reference and that the language of Section 60(a)(1) is not "clear and unambiguous." The apparent intent of the ECA, when viewed in its entirety, is to address the misclassification of construction workers through a variety of enforcement mechanisms, including enabling misclassified workers to seek lost "wages, salary, employment benefits, or other compensation" through a private right of action. *See* 820 Ill. Comp. Stat. § 185/60(a)(1); *see also, e.g.*, *id.* § 185/25 (Illinois Department of Labor investigations); *id.* 185/§ 30 (criminal prosecutions); *id.* § 185/40 (civil penalties). But the ECA itself does not expressly guarantee any particular compensation, nor does it indicate how its provisions are to interact with other Illinois employment laws that do. In fact, the ECA never mentions the IMWL, the IWPCA, any other specific laws, or even Illinois employment

law generally, and does not define the terms "wages," "salary," "employment benefits," or "compensation." Moreover, even if the ECA did incorporate other employment laws by reference, Section 60(a)(1) would still be unclear since the ECA does not indicate what it means for compensation to be lost "by reason of" an ECA violation. *Cf. Arrez v. Kelly Servs., Inc.*, 522 F. Supp. 2d 997, 1006-08 (N.D. Ill. 2007) (finding that the Illinois Day and Temporary Labor Services Act did not incorporate the IWPCA by reference and was "ambiguous as to whether a 'wage and hour violation' under the IDTLSA also includes wage and hour violations under 820 ILCS [the chapter of Illinois employment laws] generally"). In light of these ambiguities, the Court must turn to other sources to determine the legislative intent behind Section 60(a)(1).

Although the plaintiffs' interpretation of Section 60(a)(1) is not plainly derived from the express terms of the ECA, it is nevertheless persuasive. The statute would seem to have little purpose if it did not provide for those it classifies as "employees" at least the benefits that are secured to other "employees" by operation of other statutes of general application. Tellingly, the defendants offer no contrary rationale for enactment of the ECA; they do not attempt to explain the point of enacting the ECA if not to create for those it covers a rebuttable presumption that they are entitled to the legal benefits accorded to "employees" by other statutes. It is difficult to imagine that having created a presumption that construction workers are "employees" of the contractor, the legislature nevertheless intended to permit contractors to provide those "employees" lower wages and fewer benefits than it is lawful to provide other "employees" in the state, much less that it would do so without so much as a hint that such a counterintuitive result was intended and without any guidance about what the lower wage and benefit requirements might be. The ECA is *in pari materia* with other statutes governing employee wages, but under the defendants' interpretation, the provisions of the ECA relating to "wages,

6

salary, employment benefits, or other compensation" would have no effect. That alone is reason to reject the interpretation. *See People v. Davis*, 123 Ill. App. 3d 349, 352, 462 N.E.2d 824, 827 (1984) ("[*I*]*n pari materia* statutes should be construed so as to give effect to all statutory provisions in order that no portions of the statutes are rendered inoperative, superfluous, or ineffective."); *see also, e.g.*, *Fischetti v. Vill. of Schaumburg*, 2012 IL App (1st) 111008, ¶ 14, 967 N.E.2d 950, 958 ("related laws must be read together and harmonized").

Further, the interpretation of the ECA by the Illinois Department of Labor ("IDOL") supports the plaintiffs' view that Section 60(a)(1) entitles them to the back wages provided for by the IMWL and IWPCA. IDOL regulations state that the ECA "addresses the practice in the construction industry of some contractors misclassifying individuals as independent contractors in order to avoid payroll taxes, unemployment insurance contributions, workers' compensation premiums and *minimum wage and overtime payments*." Ill. Admin. Code, tit. 56, § 240.100 (emphasis added). Most relevantly, the recently amended IDOL regulations[4] provide that "an individual who meets the definition of an 'employee' in the Act . . . shall be an employee for purposes of all applicable laws relating to wages and the payment of wages contained in 820 ILCS." *Id.* § 240.110 (amended at 38 Ill. Reg. 18514, effective August 21, 2014).[5] In addition, IDOL regulations governing ECA administrative proceedings state that an employee who has been misclassified under the ECA "is entitled to all rights and benefits to which an employee is otherwise entitled under other applicable State laws by virtue of being an employee, including

---

[4] IDOL recently promulgated amendments to its ECA regulations to "clarify[] definitions and streamlin[e] the investigative process in order to comply with [recent] statutory changes." 38 Ill. Reg. 18501 (2014).

[5] The IWML and IWPCA are both contained in 820 ILCS. *See* 820 Ill. Comp. Stat. § 105/1, et seq. (IMWL); 820 Ill. Comp. Stat. § 115/1, et seq. (IWPCA). The IPWA is also contained in 820 ILCS, *see* 820 Ill. Comp. Stat. 130/0.01, et seq.; however, the plaintiffs have not addressed the IPWA in the instant motion.

but not limited to all lost wages resulting from not being paid the minimum wage or overtime." Ill. Admin. Code, tit. 56, § 240.510 (amended at 38 Ill. Reg. 18516, effective August 21, 2014).[6]

IDOL is the state agency charged with enforcing and promulgating rules under the ECA. *See* 820 Ill. Comp. Stat. §§ 185/25, 185/65. "Where the legislature expressly or implicitly delegates to an agency the authority to clarify and define a specific statutory provision, administrative interpretations of such statutory provisions should be given substantial weight unless they are arbitrary, capricious, or manifestly contrary to the statute." *Church v. State*, 164 Ill. 2d 153, 161-62, 646 N.E.2d 572, 577 (1995) (citing *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984)). IDOL's interpretations are reasonable and consistent with the ECA's legislative history. *See, e.g.*, 95th Ill. Gen. Assem., House Proceedings, April 19, 2007, at 106 (statement of Representative Osterman) ("[The Act] says that if an employee is an employee that they should be treated as such and have the benefits of such."); 95th Ill. Gen. Assem., Senate Proceedings, May 22, 2007, at 152 (statement of Senator Halvorson) ("[O]ur workers are losing out on valuable benefits that they are entitled to when they are not given the proper status, the proper classification."). The Court is persuaded that the legislature intended to provide construction workers with greater access to the benefits provided for by existing state laws applicable to workers classified as employees, and that it chose to create a "two-tier system" in which construction workers would not need to meet the same definition of "employee" as workers in other industries in order to obtain such benefits.

---

[6] Although the IDOL opinion letter relied on by the plaintiffs is not entitled to deference since it lacks the force of law, *see Resurrection Home Health Servs. v. Shannon*, 2013 IL App (1st) 111605, ¶ 36, 983 N.E.2d 1079, 1089, the interpretation of Section 60(a)(1) in the letter is nevertheless consistent with the recent clarifying amendments made to IDOL's ECA regulations. *See* Letter from IDOL's Chief Legal Counsel, Dkt. 91-3, at 2 ("[A]n individual determined to be an 'employee' pursuant to the ECA is entitled to the substantive right to receive Illinois minimum and overtime wages pursuant to the IWML and other earned wages pursuant to the IWPCA . . . .").

Although no other court has construed Section 60(a)(1) of the ECA, the Court's analysis here is consistent with the logic of *Arrez*, which addressed a similar question of statutory construction with respect to the Illinois Day and Temporary Labor Services Act (the "IDTLSA"). *See* 522 F. Supp. 2d at 1005-07. The statutory provision at issue stated that a day or temporary laborer whose rights were violated under the IDTLSA was entitled to collect "the amount of any wages, salary, employment benefits, or other compensation denied or lost . . . by reason of the violation." 820 Ill. Comp. Stat. § 175/95(a)(1). Based on evidence of legislative intent including IDOL regulations on the IDTLSA stating that payments must comply with all laws relating to wages in 820 ILCS, the *Arrez* court determined that the legislature had intended to provide extra protections to day and temporary laborers and that the IDTLSA's remedy provisions entitled the plaintiffs to collect unpaid vacation and holiday pay guaranteed by the IPWCA, even though the IDTLSA did not incorporate the IPWCA by reference. *Id.* at 1006-07. The logic of *Arrez* thus supports the conclusion that the ECA entitles the plaintiffs in this case to collect unpaid wages guaranteed by the IMWL and IPWCA.

Accordingly, the Court grants the plaintiffs' motion for summary judgment. The plaintiffs are entitled to collect any unpaid wages, earned since January 1, 2008,[7] that they would have been entitled to under the IMWL and IWPCA if Master Hand had treated them as employees for purposes of those statutes.[8] Since the protections of the IMWL and IWPCA apply

---

[7] The ECA went into effect January 1, 2008. 820 Ill. Comp. Stat. § 185/999; *see also* Ill. Admin. Code tit. 56, § 240.120 ("The misclassification of an employee as an independent contractor prior to January 1, 2008 shall not serve as the basis for a violation under the Act.").

[8] The IMWL states that "[e]very employer shall pay to each of his employees in every occupation [the minimum wage]" and that "no employer shall employ any of his employees for a workweek of more than 40 hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than 1 ½ times the regular rate at which he is employed." 820 Ill. Comp. Stat. §§ 105/4(a)(1), 105/4a(1). The IWPCA

as long as there is an employer-employee relationship, *see, e.g.*, *Bulaj v. Wilmette Real Estate & Mgmt. Co.*, No. 09 CV 6263, 2010 WL 4237851, at *10 (N.D. Ill. Oct. 21, 2010) (granting summary judgment for the plaintiff on the defendants' liability under the IMWL); *Costello v. BeavEx Inc.*, No. 12 C 7843, 2014 WL 1289612, at *11-13 (N.D. Ill. Mar. 31, 2014) (granting summary judgment for the named plaintiffs on the defendants' liability under the IWPCA), the plaintiffs do not need to establish that they meet any other statutory requirements in order to collect unpaid wages based on the IMWL and IWPCA. With respect to a judgment under Section 60(a)(1) of the ECA, only the amount of unpaid wages due remains to be established.

\* \* \*

For the reasons set forth above, the Court grants the plaintiffs' motion for summary judgment.

Date: September 16, 2014

John J. Tharp, Jr.
United States District Judge

---

requires "[e]very employer . . . at least semi-monthly, to pay every employee all wages earned during the semi-monthly pay period." *Id.* § 115/3.